## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AISHA BENNETT, Individually and for Others Similarly Situated | **Case No.** _____ |
| | Jury Trial Demanded |
| v. | |
| CARE ACCESS RESEARCH LLC | FLSA Collective Action Rule 23 Class Action |

## ORIGINAL CLASS & COLLECTIVE ACTION COMPLAINT

### SUMMARY

1.      Aisha Bennett (Bennett) brings this class and collective action to recover unpaid wages and other damages from Care Access Research LLC (Care Access).

2.      Bennett works for Care Access as a Clinical Researcher and Investigational Product Preparer in Pennsylvania, Massachusetts, New York, and Vermont.

3.      Like the Putative Class Members (as defined below), Bennett regularly works more than 40 hours a week.

4.      But these workers never receive overtime compensation when they work more than 40 hours in a workweek.

5.      Instead of paying overtime, Care Access misclassifies Bennett and the Putative Class Members as independent contractors and pays them the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (or "straight time for overtime").

6.      Care Access's straight time for overtime pay scheme violates the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq.* (FLSA); the Pennsylvania Minimum Wage Act, 43 PA. STAT. § 333.101, *et seq.* (PMWA); and the Pennsylvania Wage Payment and Collection Law, 43 PA. STAT. § 260.1, *et seq.* (PWPCL); the Massachusetts Overtime Law, MASS. GEN. LAWS CH. 150, § 1, *et seq.* (MOL); the Massachusetts Wage Act, MASS. GEN. LAWS CH. 149, § 148, *et seq.* (MWA); the New York Labor Law,

NY LAB. LAW ARTS. 6 and 19, *et seq.* (NYLL); and the New York Codes, Rules, and Regulations, 12 NY CODES R. & REGS. § 142-2.2 (NYCRR) because it deprives Bennett and the Putative Class Members of overtime pay at the proper premium rate.

7.      Further, in addition to depriving Bennett and the Putative Class Members of premium overtime wages, Care Access also does not pay these employees for all the hours they work.

8.      Instead, Care Access automatically deducts 30 minutes per shift from Bennett's and the Putative Class Members' work time for so-called meal breaks.

9.      Bennett and the Putative Class Members are thus not paid for that time.

10.      But Care Access fails to provide Bennett and the Putative Class Members with *bona fide* meal breaks.

11.      Instead, Care Access requires Bennett and the Putative Class Members to remain on-duty throughout their shifts and continuously subjects them to interruptions, including during their unpaid "meal breaks."

12.      Care Access's auto-deduction meal break policy violates the FLSA, PMWA, PWPCL, MOL, MWA, NYLL, and NYCCR by depriving Bennett and the Putative Class Members of wages, including overtime wages, for all hours worked, including those hours worked in excess of 40 hours in a workweek.

## JURISDICTION & VENUE

13.      This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this case involves a federal question under the FLSA. 29 U.S.C. § 216(b).

14.      The Court also has supplemental jurisdiction over the state-law subclass claims because these claims arise from a common nucleus of operative facts. 28 U.S.C. § 1367.

15.      This Court has general personal jurisdiction over Care Access because Care Access maintains its principal office and corporate headquarters in Boston, Massachusetts.

16.     Venue is proper in this District because Care Access is headquartered in Boston, Massachusetts. 28 U.S.C. § 1391(b)(1).

## PARTIES

17.     Bennett has worked for Care Access as a Clinical Researcher and Investigational Product Preparer in Pennsylvania, Massachusetts, New York, and Vermont since approximately August 2022.

18.     Throughout her employment, Care Access classified Bennett as an independent contractor to avoid paying her overtime wages.

19.     Instead, throughout her employment, Care Access paid Bennett the same hourly rate for all hours worked, including those in excess of 40 in a workweek (or "straight time for overtime").

20.     Further, throughout her employment, Care Access subjected Bennett to its common practice of automatically deducting 30 minutes a day from her recorded work time for so-called "meal breaks."

21.     Bennett's written consent is attached as **Exhibit 1**.

22.     Bennett brings this action on behalf of herself and other similarly situated workers who Care Access misclassified as independent contractors and (1) paid under its straight time for overtime pay scheme and/or (2) were subject to Care Access's automatic meal break deduction policy.

23.     Care Access misclassified each of these workers as independent contractors and (1) paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek, and/or (2) auto-deducted 30 minutes from their recorded work time each shift for so-called "meal breaks.

24.     The FLSA Collective of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, Care Access, who were classified as independent contractors, and who (1) were paid straight time for overtime and/or (2) received an automatic**

**meal period deduction at any time during the past 3 years ("FLSA Collective Members" or "FLSA Collective").**

25. Bennett also seeks to represent such a class under the PMWA and PWPCL pursuant

to FED. R. CIV. P. 23.

26. The Pennsylvania Class of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, Care Access in Pennsylvania, who were classified as independent contractors, and who (1) paid straight time for overtime and/or (2) received an automatic meal period deduction at any time during the past 3 years ("Pennsylvania Class Members" or "Pennsylvania Class").**

27. Bennett also seeks to represent such a class under the MOL and MWA pursuant to

FED. R. CIV. P. 23.

28. The Massachusetts Class of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, Care Access in Massachusetts, who were classified as independent contractors, and who (1) paid straight time for overtime and/or (2) received an automatic meal period deduction at any time during the past 3 years ("Massachusetts Class Members" or "Massachusetts Class").**

29. Bennett also seeks to represent such a class under NYLL and NYCRR pursuant to

FED. R. CIV. P. 23.

30. The New York Class of similarly situated employees is defined as:

> **All individuals who worked for, or on behalf of, Care Access in Massachusetts, who were classified as independent contractors, and who (1) paid straight time for overtime and/or (2) received an automatic meal period deduction at any time during the past 6 years and 228 days[1] ("New York Class Members" or "New York Class").**

---

[1] The statute of limitations was tolled 228 days due to Governor Cuomo's Executive Order 202.8 (2020) and subsequent orders Executive Orders 202.14, 202.28, 202.38, 202.48, 202.55.1, 202.60, and 202.67. In total, the Executive Orders were effective and implemented tolling for 228 days, from

31.     The FLSA Collective Members, the Pennsylvania Class Members, the Massachusetts Class Members, and the New York Class Members are collectively referred to as the "Putative Class Members" or the "Putative Classes."

32.     Care Access is a Delaware limited liability company that maintains its headquarters in Boston, Massachusetts.

33.     Care Access may be served with process by serving its registered agent: **Corporation Service Company, 84 State Street, Boston, Massachusetts 02109**.

COVERAGE UNDER THE FLSA

34.     At all relevant times, Care Access was an employer within the meaning of Section 3(d) of the FLSA, 29 U.S.C. § 203(d).

35.     At all relevant times, Care Access was an enterprise within the meaning of Section 3(r) of the FLSA. 29 U.S.C. § 203(r).

36.     At all relevant times, Care Access was an enterprise engaged in commerce or in the production of goods for commerce within the meaning of Section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), because it had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials – such as research supplies, testing equipment, and personal protective equipment – that have been moved in or produced for commerce.

37.     At all relevant times, Care Access has had an annual gross volume of sales made or business done of not less than $500,000 each year.

38.     At all relevant times, Bennett and the FLSA Collective Members were engaged in

---

March 20th to November 3, 2020. *See McLaughlin v. Snowlift Inc.*, 71 Misc. 3d 1226(A) (Sup. Ct., Kings County 2021) (calculating that, together, the Executive Orders lasted 228 days).

commerce or in the production of goods for commerce.

39.     Care Access uniformly paid Bennett and the FLSA Collective Members the same hourly rate for all hours worked, including those in excess of 40 in a workweek.

40.     As a result, Care Access failed to pay Bennett and the FLSA Collective Members overtime wages at the proper premium rate in violation of the FLSA.

41.     Care Access's straight time for overtime pay scheme, which deprives Bennett and the FLSA Collective Members of premium overtime wages for the weeks in which these workers work over 40 hours, is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

42.     Further, Care Access uniformly deducted 30 minutes from Bennett and FLSA Collective Members' wages each shift for so-called "meal breaks," regardless of whether these employees actually receive *bona fide*, non-interrupted meal breaks.

43.     As a result, Care Access failed to pay Bennett and the FLSA Collective Members for the compensable work they perform during their unpaid meal breaks in violation of the FLSA.

44.     Care Access's automatic meal break deduction policy, which deprives Bennett and the FLSA Collective Members of overtime compensation for the weeks in which these workers work over 40 hours is a violation of the FLSA. 29 U.S.C. § 207(a) & (e).

45.     Care Access uniformly applied these illegal policies regardless of any alleged individualized factors such as precise job title, project, or geographic location.

46.     Care Access treated Bennett and the FLSA Collective Members as employees and uniformly dictated the pay and other employment practices that it applied to them.

47.     Care Access's misclassification of Bennett and the FLSA Collective Members as independent contractors does not alter their status as employees for purposes of the FLSA.

## THE FACTS

48.    Care Access is a healthcare research network that provides training, staff, administration, and other resources to medical research projects and FDA clinical trials across the United States, including in Pennsylvania, Massachusetts, and New York.

49.    To complete its business objectives, Care Access employs workers, including Bennett and the Putative Class Members, to conduct medical research projects and clinical trials in accordance with its healthcare and pharmaceutical industry clients' strict research protocols and testing procedures.

50.    Care Access uniformly misclassifies these workers, including Bennett and the Putative Class Members, as independent contractors to avoid paying them overtime wages.

51.    But Care Access does not hire these workers, including Bennett and the Putative Class Members, on a project-by-project basis.

52.    Rather, Care Access hires and treats these workers, including Bennett and the Putative Class Member, just like regular employees.

53.    Care Access uniformly pays these workers, including Bennett and the Putative Class Members, on an hourly basis.

54.    Indeed, Care Access uniformly pays Bennett and the Putative Class Members the same hourly rate for all hours worked, including those in excess of 40 hours in a workweek (or "straight time for overtime").

55.    While exact job titles and job duties may differ, these employees are subjected to the same or similar illegal pay practices for similar work.

56.    For example, Bennett has worked for Care Access as a Clinical Researcher and Investigational Product Preparer in Pennsylvania, Massachusetts, New York, and Vermont since approximately August 2022.

57.     As a Clinical Researcher and Investigational Product Preparer, Bennett's primary responsibilities include preparing and administering vaccines to individuals participating in pharmaceutical research projects and FDA clinical trials for Pfizer vaccines in strict adherence to Care Access's and/or Pfizer's research methodology, protocols, and procedures.

58.     Throughout her employment, Care Access misclassified Bennett as an independent contractor and paid her on an hourly basis.

59.     Specifically, Care Access paid Bennett the same hourly rate ($25) for all hours worked, including those in excess of 40 hours in a workweek.

60.     Care Access uniformly paid Bennett and the Putative Class Members under its straight time for overtime pay scheme that deprives these employees of overtime pay at the proper premium rate when they work more than 40 hours in a workweek in violation of the FLSA and applicable state wage and hour laws.

61.     Bennett and the Putative Class Members are Care Access's hourly employees.

62.     Bennett and the Putative Class Members are not paid a guaranteed salary.

63.     If Bennett and the Putative Class Members work fewer than 40 hours in a week, Care Access only pays them for the hours they actually worked.

64.     But Bennett and the Putative Class Members regularly work more than 40 hours in a week.

65.     Indeed, Bennett and the Putative Class Members typically work 8-18 hours a day, for 5-7 days a week, for 2-week hitches at a time.

66.     Bennett and the Putative Class Members work in accordance with the schedule set by Care Access and/or its clients.

67.     Despite Bennett and the Putative Class Members regularly working overtime, Care Access paid them the same hourly rate for all hours worked, including those in excess of 40 in a workweek, in violation of the FLSA and applicable state wage and hour laws.

68.     Rather than receiving time and half as required by the FLSA and applicable state wage and hour laws, Care Access only paid Bennett and the Putative Class Members "straight time" pay for the overtime hours they worked.

69.     Care Access's "straight time for overtime" pay scheme violates the FLSA and applicable state wage and hour laws because it deprives Bennett and the Putative Class Members of overtime pay at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 in a workweek.

70.     Further, throughout her employment, Care Access subjected Bennett to its common practice of automatically deducting 30 minutes a day from his recorded work time for so-called "meal breaks," regardless of whether she actually received a *bona fide* meal break.

71.     But Bennett never receives *bona fide* meal breaks.

72.     Instead, Care Access requires Bennett to remain on-duty and working throughout her shifts, continuously subjecting her to interruptions, including during her unpaid meal periods.

73.     Bennett and the Putative Class Members performed their jobs under Care Access's (and/or its clients') supervision, and using materials, equipment, and cleaning products approved and supplied by Care Access (and/or its clients).

74.     Care Access requires Bennett and the Putative Class Members to follow and abide by common work, time, pay, and overtime policies and procedures in the performance of their jobs.

75.     At the end of each pay period, Bennett and the Putative Class Members received wages from Care Access that were determined by common systems and methods that Care Access selected and controlled.

76.     Care Access requires its hourly employees, including Bennett and the Putative Class Members, to record their hours worked.

77.     Further, Care Access subjects its hourly employees, including Bennett and the Putative Class Members, to a common policy and practice of automatically deducting time from these employees' recorded hours worked for meal periods.

78.     Specifically, Care Access automatically deducts 30 minutes from Bennett and the Putative Class Members' time records each shift they work at least 6 hours for meal periods, regardless of whether these employees actually receive a full, uninterrupted, 30-minute meal break.

79.     But Care Access fails to provide Bennett and the Putative Class Members with *bona fide* meal periods.

80.     Instead, Care Access requires Bennett and the Putative Class Members to remain on-duty and working throughout their shifts, continuously subjecting them to interruptions, including during their unpaid meal periods.

81.     This unpaid time is compensable under the FLSA and applicable state wage and hour laws because Care Access knew, or should have known, that (1) Bennett and the Putative Class Members were performing unpaid work during their "meal breaks," (2) they were interrupted or subject to interruptions with work duties during any attempted meal period, (3) they entirely skipped the meal period due to work demands, and/or (4) the meal period was less than 30 minutes.

82.     Care Access failed to exercise its duty to ensure Bennett and the Putative Class Members were not performing work that Care Access did not want performed during their unpaid "meal breaks."

83.     Indeed, Care Access does not provide Bennett and the Putative Class Members with a way to report when their meal breaks are missed, interrupted, or otherwise not *bona fide* to prevent Care Access from automatically deducting 30 minutes from their work time.

84.    Despite accepting the benefits, Care Access did not pay Bennett and the Putative Class Members for the compensable work they performed during their "meal breaks."

85.    Thus, under Care Access's uniform automatic meal break deduction policy, Bennett and the Putative Class Members are denied overtime pay for those on-duty "meal breaks" in workweeks in which they work in excess of 40 hours in violation of the FLSA and applicable state wage and hour laws.

86.    Likewise, Care Access's uniform automatic meal break deduction policy deprives Bennet and the Putative Class Members of "straight time" pay (at their agreed hourly rates) for all hours worked in workweeks in which they worked fewer than 40 hours in violation of the PWPCL, MWA, and NYLL.

87.    Care Access knows Bennett and the Putative Class Members routinely perform work "off the clock" during their unpaid meal breaks because Care Access expects and requires these employees to do so.

88.    But Care Access does not pay Bennett and the Putative Class Members for their routine "off the clock" work, including those hours worked in excess of 40 hours in a workweek, in violation of the FLSA and applicable state wage and hour laws.

89.    Bennett worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

90.    Likewise, each Putative Class Member worked more than 40 hours in at least one workweek during the three years before this Complaint was filed.

91.    Indeed, Bennett and the Putative Class Members typically work 8-18 hours a day, for 5-7 days a week, for 2-week hitches at a time.

92.     And Bennett and the Putative Class Members regularly are also required to work during their unpaid meal breaks "off the clock" in order to complete their job duties and responsibilities.

93.     As a result, Bennett and the Putative Class Members work in excess of 40 hours in a typical workweek.

94.     When Bennett and the Putative Class Members worked more than 40 hours in a workweek, Care Access did not pay them 1.5 times their regular hourly rate for all overtime hours worked due to (1) Care Access's straight time for overtime pay scheme and/or (2) Care Access's failure to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

95.     Likewise, when Bennett and the Putative Class Members worked fewer than 40 hours in a workweek, Care Access did not pay them "straight time" pay (at their agreed hourly rates) for all hours worked due to Care Access's failure to include time these employees worked during their unpaid meal breaks in their total number of hours worked in a given workweek.

96.     Despite uniformly misclassifying Bennett and the Putative Class Members as independent contractors, Care Access controls all meaningful aspects of these workers' jobs.

97.     Care Access controls Bennett and the Putative Class Members' rates and methods of pay.

98.     Care Access controls Bennett and the Putative Class Members' schedules and assignments.

99.     Care Access controls Bennett and the Putative Class Members' work.

100.    Care Access requires Bennett and the Putative Class Members to follow Care Access's (and its clients') policies, procedures, protocols, and specifications.

101.    Bennett and the Putative Class Members' work must strictly adhere to the quality standards put in place by Care Access (and its clients).

102.    Bennett and the Putative Class Members are not required to possess any unique or specialized skillset (other than that maintained by all other workers in their respective positions) to perform their job duties.

103.    Indeed, the daily and weekly activities of Bennett and the Putative Class Members are routine and largely governed by standardized plans, procedures, and checklists created by Care Access (and its clients).

104.    Virtually every job function is predetermined by Care Access (and its clients), including the materials used, the research and testing procedures, the data to compile, the schedule of work, and related work duties.

105.    Care Access prohibits Bennett and the Putative Class Members from varying their job duties outside of these predetermined parameters and requires Bennett and the Putative Class Members to follow Care Access's (and its clients') policies, procedures, protocols, and directives.

106.    Care Access prohibited Bennett and Putative Class Members from straying from Care Access's (and its clients') procedures, plan, protocols, and directives.

107.    Without the job performed by Bennett and the Putative Class Members, Care Access would not be able to complete its business objectives of conducting pharmaceutical and medical clinical trials and research projects for its clients.

108.    Bennett and the Putative Class Members relied on Care Access for work and compensation.

109.    Bennett and the Putative Class Members cannot subcontract out the work they are assigned by Care Access.

- 13 -

110.    Bennett and the Putative Class Members did not substantially invest in the tools required to complete the overall job to which they were assigned.

111.    Rather, Care Access incurred the large-scale business and operating expenses like marketing, payrolls, equipment, tools, and materials.

112.    Bennett and the Putative Class Members did not market their services while employed by Care Access.

113.    Care Access set Bennett and the Putative Class Members' work schedule, which prohibited them from working other jobs for other companies while working for Care Access.

114.    Indeed, Bennett and the Putative Class Members are required to travel and live at or near their assigned jobsites during their hitches.

115.    At all relevant times, Care Access maintained control, oversight, and direction of Bennett and the Putative Class Members, including, but not limited to, hiring, firing, disciplining, timekeeping, payroll, and other employment practices.

116.    Bennett and the Putative Class Members do not have the power to hire, fire, or discipline any Care Access employees.

117.    Care Access knew, or should have known, it was subject to the FLSA and applicable state wages and hour laws, including their respective overtime provisions.

118.    Care Access knew, or should have known, the FLSA and applicable state wages and hour laws require it to pay employees, including Bennett and the Putative Class Members, overtime wages at rates not less than 1.5 times these employees' regular rates of pay for all hours worked in excess of 40 hours in a workweek.

119.    Care Access knew, or should have known, the PWPCL, MWA, and NYLL require it to pay employees, including Bennett and the Putative Class Members, all wages earned, at the rates Care Access agreed to pay them, for the work they performed for Care Access.

120.     Care Access knew, or should have known, Bennett and the Putative Class Members worked more than 40 hours in a week.

121.     Care Access knew, or should have known, Bennett and the Putative Class Members regularly worked during their unpaid meal breaks because Care Access expected and required them to do so.

122.     Care Access knew, should have known, or showed reckless disregard for, whether the conduct described in this Complaint violated the FLSA and applicable state wages and hour laws.

123.     Care Access knowingly, willfully, and/or in reckless disregard carried out its illegal straight time for overtime pay scheme that deprived Bennett and the Putative Class Members of overtime compensation at the proper premium rate for hours worked in excess of 40 hours in a workweek in violation of the FLSA and applicable state wages and hour laws.

124.     Care Access knowingly, willfully, and/or in reckless disregard carried out its illegal automatic meal break deduction policy that deprived Bennett and the Putative Class Members of wages, including overtime compensation, for all hours worked, including those worked in excess of 40 hours in a workweek, in violation of the FLSA and applicable state wages and hour laws.

125.     Nonetheless, Care Access failed to pay Bennett and the Putative Class Members overtime at the proper premium rate for all hours these employees worked in excess of 40 hours in a workweek.

126.     Likewise, Care Access failed to pay Bennett and the Putative Class Members all wages earned, at the rates Care Access agreed to pay them, for all hours worked up to 40 hours in a workweek.

127.     Care Access's failure to pay Bennett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor was the decision not to pay these employees overtime at the proper premium rate for all overtime hours worked made in good faith.

128.    Likewise, Care Access's failure to pay Bennett and the Putative Class Members all wages earned, at the rates Care Access agreed to pay them, for all hours worked was neither reasonable; nor was the decision not to pay these employees all wages earned, at the rates Care Access agreed to pay them, for all hours worked made in good faith.

## CLASS & COLLECTIVE ACTION ALLEGATIONS

129.    Bennett brings her claims as a class and collective action under §216(b) of the FLSA and Federal Rule of Civil Procedure 23.

130.    The Putative Class Members were uniformly victimized by (1) Care Access's straight time for overtime pay scheme, and/or (2) Care Access's automatic meal break deduction policy, both of which are in willful violation of the FLSA and applicable state wage and hour laws.

131.    Other Putative Class Members worked with Bennett and indicated they were paid in the same manner, performed similar work, and were subject to Care Access's same straight time for overtime and/or automatic meal break deduction policies.

132.    Based on her experiences with Care Access, Bennett is aware Care Access's illegal practices were imposed on the Putative Class Members.

133.    The Putative Class Members are similarly situated in all relevant respects.

134.    Even if their precise job duties and locations might vary somewhat, these differences do not matter for the purposes of determining their entitlement to overtime.

135.    Therefore, the specific job titles or precise job locations of the various members of the Putative Classes do not prevent class or collective treatment.

136.    Rather, the Putative Classes are held together by Care Access's uniform straight time for overtime and automatic meal break deduction policies that systematically deprived Bennett and the Putative Class Members of overtime pay at the proper premium rates for all hours worked in excess of 40 in a workweek.

137.    The Putative Class Members are similarly denied premium overtime wages when they work more than 40 hours in a workweek.

138.    Likewise, the Putative Class Members are similarly denied timely "straight time" wages (at their agreed hourly rates) when they work fewer than 40 hours in a workweek.

139.    The back wages owed to Bennett and the Putative Class Members will be calculated using the same records and using the same formula.

140.    Bennett's experiences are therefore typical of the experiences of the Putative Class Members.

141.    Bennett has no interests contrary to, or in conflict with, the Putative Class Members that would prevent class or collective treatment.

142.    Like each Putative Class Member, Bennett has an interest in obtaining the unpaid wages owed under federal and/or state law.

143.    A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

144.    Absent a class and collective action, many Putative Class Members will not obtain redress for their injuries, and Care Access will reap the unjust benefits of violating the FLSA and applicable state wage and hour laws.

145.    Further, even if some of the Putative Class Members could afford individual litigation against Care Access, it would be unduly burdensome to the judicial system.

146.    Concentrating the litigation in one forum will promote judicial economy and parity among the claims of the Putative Class Members, as well as provide judicial consistency.

147.    The questions of law and fact that are common to each Putative Class Member predominate over any questions affecting solely the individual members.

148.    Among the common questions of law and fact are:

a.    Whether the Putative Class Members were misclassified as independent contractors;

b.    Whether the Putative Class Members, as a matter of economic reality, were Care Access's "employees";

c.    Whether Care Access applied its straight time for overtime pay scheme uniformly to the Putative Class Members across the country;

d.    Whether Care Access's straight time for overtime pay scheme deprived Bennett and the Putative Class Members of premium overtime wages they are owed under the FLSA and applicable state wage and hour laws;

e.    Whether Care Access engaged in a policy and practice of automatic time deductions for meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and applicable state wage and hour laws;

f.    Whether Care Access's automatic meal break deduction policy deprived Bennett and the Putative Class Members of pay for time worked during meal periods that were not *bona fide*, continuous, and uninterrupted in violation of the FLSA and applicable state wage and hour laws;

g.    Whether Care Access failed to pay Bennett and the Putative Class Members overtime compensation for all hours worked in excess of 40 hours in a workweek, including hours worked during missed and interrupted meal breaks, in violation of the FLSA and applicable state wage and hour laws;

h.    Whether Care Access failed to pay Bennett and the Putative Class Members all wages earned at their agreed rates for all hours worked in violation of the PWCPL, MWA, and/or NYLL;

- 18 -

> i.     Whether Care Access knew, or had reason to know, Bennett and the Putative Class Members were requested, suffered, permitted, or allowed to work during their unpaid meal breaks;
>
> j.     Whether Care Access's violations of the FLSA and applicable state wage and hour laws resulted from a continuing course of conduct;
>
> k.     Whether Care Access's decision not to pay Bennett and the Putative Class Members overtime wages at the proper rate for all overtime hours worked was made in good faith; and
>
> l.     Whether Care Access's violations of the FLSA and applicable state wage and hour laws were willful.

149.    Bennett and the Putative Class Members sustained damages arising out of Care Access's illegal and uniform employment policies.

150.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to Care Access's records, and there is no detraction from the common nucleus of liability facts.

151.    Therefore, the issue of damages does not preclude class or collective treatment.

152.    Bennett knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class or collective action.

153.    Care Access is liable under the FLSA and applicable state wages and hour laws for failing to pay overtime wages to Bennett and the Putative Class Members.

154.    Likewise, Care Access is liable under the PWPCL, MWA, and NYLL for failing to pay Bennett and the Putative Class Members all wages earned, at the rates Care Access agreed to pay them, for all hours worked.

155.    Consistent with Care Access's illegal straight time for overtime pay scheme, Bennett and the Putative Class Members were not paid overtime compensation at the proper premium rate when they worked more than 40 hours in a workweek.

156.    Consistent with Care Access's illegal automatic meal break deduction policy, Bennett and the Putative Class Members were not paid overtime compensation for all overtime hours worked when they worked more than 40 hours in a workweek.

157.    Consistent with Care Access's illegal automatic meal break deduction policy, Bennett and the Putative Class Members were not paid "straight time" pay (at their agreed hourly rates) for all hours worked when they worked fewer than 40 hours in a workweek.

158.    As part of its regular business practices, Care Access intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating the FLSA and applicable state wage and hour laws with respect to Bennett and the Putative Class Members.

159.    Care Access's illegal straight time for overtime and automatic meal break deduction policies deprived Bennett and the Putative Class Members of the wages, including premium overtime wages, they are owed under federal and/or state law.

160.    There are many similarly situated Putative Class Members who have been denied overtime pay in violation of the FLSA who would benefit from the issuance of a court-supervised notice of this lawsuit and the opportunity to join it.

161.    This notice should be sent to the Putative Class Members pursuant to 29 U.S.C. § 216(b).

162.    The Putative Class Members are known to Care Access, are readily identifiable, and can be located through Care Access's records.

## COUNT I
### FAILURE TO PAY OVERTIME WAGES UNDER THE FLSA
### 29 U.S.C. § 201, *ET SEQ.*
### (FLSA COLLECTIVE)

163.    Bennett realleges and incorporates all other paragraphs by reference.

164.    Bennett brings her FLSA claim as a collective action under 29 U.S.C. § 216(b).

165.    Care Access violated, and is violating, the FLSA by failing to pay Bennett and the FLSA Collective Members overtime at the proper premium rates for all hours worked in excess of 40 in a workweek, including hours worked "off the clock" during these employees' unpaid meal periods.

166.    Throughout the relevant period, Care Access paid Bennett and the FLSA Collective Members the same hourly rate for all hours worked, including those worked in excess of 40 hours in a workweek.

167.    Throughout the relevant period, Care Access automatically deducted 30 minutes per shift from Bennett and the FLSA Collective Members' work time for so-called "meal breaks."

168.    Throughout the relevant period, Care Access expected and required Bennett and the FLSA Collective Members to remain on-duty and be available to work, including during their unpaid "meal breaks."

169.    Bennett and the FLSA Collective Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

170.    Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the Putative Class Members overtime compensation at the proper premium rates for all overtime hours worked.

171.    Care Access's failure to pay Bennett and the Putative Class Members overtime compensation at the proper premium rate for all overtime hours worked was neither reasonable, nor

was the decision not to pay them overtime at the proper premium rate for all overtime hours worked made in good faith.

172.    Accordingly, Bennett and the Putative Class Members are entitled to recover their unpaid overtime wages under the FLSA in an amount equal to 1.5 times their regular hourly rates of pay, plus an equal amount as liquidated damages, and attorney's fees and costs.

**COUNT II**
**FAILURE TO PAY OVERTIME WAGES UNDER THE PMWA**
**43 PA. STAT. § 333.101, *ET SEQ.***
**(PENNSYLVANIA CLASS)**

173.    Bennett realleges and incorporates all other paragraphs by reference.

174.    Bennett brings her PMWA claims as a class action pursuant to FED. R. CIV. P. 23.

175.    The conduct alleged violates the PMWA, 43 PA. STAT. § 333.101, *et seq.*

176.    At all relevant times, Care Access was an "employer" within the meaning of, and subject to the requirements of, the PMWA. *See* 43 PA. STAT. § 333.103(g).

177.    At all relevant times, Care Access employed Bennett and the Pennsylvania Class Members as "employees" within the meaning of the PMWA. *See* 43 PA. STAT. § 333.103(h).

178.    Section 333.104(c) of the PMWA requires employers, like Care Access, to pay employees, like Bennett and the Pennsylvania Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek. 43 PA. STAT. § 333.104(c).

179.    Bennett and the Pennsylvania Class Member are entitled to overtime pay under the PMWA.

180.    Care Access violated, and is violating, the PMWA by failing to pay Bennett and the Pennsylvania Class Members overtime wages (at the proper premium rate) for all hours worked in excess of 40 in a workweek, including hours these employees work during their unpaid "meal breaks." *See* 43 PA. STAT. § 333.104(c).

181.    Bennett and the Pennsylvania Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

182.    Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the Pennsylvania Class Members premium overtime compensation for all overtime hours worked.

183.    Care Access's failure to pay Bennett and the Pennsylvania Class Members premium overtime compensation was neither reasonable, nor was the decision not to pay these employees premium overtime compensation made in good faith.

184.    Accordingly, Bennett and the Pennsylvania Class Members are entitled to recover their unpaid overtime in amount equal to 1.5 times the regular rate of pay for all hours worked in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, as well as attorney's fees, costs, and expenses of this action, as provided by the PMWA. *See* 43 PA. STAT. § 333.113.

**COUNT III**
**FAILURE TO PAY ALL WAGES UNDER THE PWPCL**
**43 PA. STAT. § 260.1, *ET SEQ.***
**(PENNSYLVANIA CLASS)**

185.    Bennett realleges and incorporates all other paragraphs by reference.

186.    Bennett brings her PWPCL claims as a class action pursuant to FED. R. CIV. P. 23.

187.    The conduct alleged violates the PWPCL, 43 PA. STAT. § 260.1, *et seq.*

188.    At all relevant times, Care Access was an "employer" within the meaning of, and subject to the requirements of, the PWPCL. *See* 43 PA. STAT. § 260.2a.

189.    At all relevant times, Care Access employed Bennett and the Pennsylvania Class Members as "employees" within the meaning of the PWPCL.

190.     The PWPCL requires employers, like Care Access, to pay employees, like Bennett and the Pennsylvania Class Members, all wages (including overtime wages) earned, due, and owing to them on their regular payday. 43 PA. STAT. § 260.3(a).

191.     During the course of their employment, Case Access agreed to pay Bennett and each Pennsylvania Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek, as well as overtime rates for all hours they worked in excess of 40 hours in a workweek.

192.     Bennett and each Pennsylvania Class Member accepted Care Access's offer.

193.     But during the course of their employment, Care Access failed to pay Bennett and the Pennsylvania Class Members for all time they worked at the rates Care Access agreed to pay them because (1) Care Access's straight time for overtime pay scheme deprived them of overtime wages; and/or (2) Care Access automatically deducted 30 minutes/shift from these employees' recorded hours worked.

194.     As a result of Care Access illegal straight time for overtime pay scheme and automatic meal break deduction policy, Bennett and the Pennsylvania Class Member have been deprived of all wages earned, due, and owed to them. *See* 43 PA. STAT. § 260.3(a).

195.     Bennett and the Pennsylvania Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

196.     Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the Pennsylvania Class Members all wages earned, for all hours worked, at the rates Care Access agreed to pay them.

197.     Care Access's failure to pay Bennett and the Pennsylvania Class Members all wages earned, for all hours worked, at the rates Care Access agreed to pay them, was neither reasonable; nor

was the decision not to pay these employees all wages earned, for all hours worked, at the rates Care Access agreed to pay them made in good faith.

198.    Accordingly, Bennett and the Pennsylvania Class Members are entitled to recover their unpaid wages, plus an equal amount as liquidated damages, as well as attorney's fees and costs. *See* 43 PA. STAT. § 260.9a.

**COUNT IV**
**FAILURE TO PAY OVERTIME UNDER THE MOL**
**MASS. GEN. LAWS CH. 151, § 1, *ET SEQ.***
**(MASSACHUSETTS CLASS)**

199.    Bennett realleges and incorporates all other paragraphs by reference.

200.    Bennett brings her MOL claims as a class action pursuant to Fed. R. Civ. P 23.

201.    The conduct alleged violates the MOL, MASS. GEN. LAWS CH. 151, § 1, *et seq.*

202.    At all relevant times, Care Access was an "employer" subject to the requirements of the MOL.

203.    At all relevant times, Care Access employed Bennett and each Massachusetts Class Member as an "employee" within the meaning of the MOL.

204.    Section 1 of the MOL requires employers, like Care Access, to pay employees, including Bennett and the Massachusetts Class Members, overtime wages at rates not less than 1.5 times their regular hourly rates for all hours worked in excess of 40 hours in a work week. *See* MASS. GEN. LAWS CH. 151, § 1A.

205.    Bennett and the Massachusetts Class Members are entitled to overtime pay under MOL.

206.    Care Access violated, and is violating, the MOL by failing to pay Bennett and the Massachusetts Class Members overtime wages (at the proper premium rate) for all overtime hours

worked when these employees work excess of 40 hours per workweek. *See* MASS. GEN. LAWS CH. 151, § 1A.

207.    Bennett and the Massachusetts Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

208.    Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the Massachusetts Class Members premium overtime compensation for all overtime hours worked.

209.    Care Access's failure to pay Bennett and the Massachusetts Class Members premium overtime compensation was neither reasonable, nor was the decision not to pay these employees premium overtime compensation made in good faith.

210.    Accordingly, Bennett and the Massachusetts Class Members are entitled to recover their unpaid overtime wages, treble damages, and attorney's fees and costs. *See* MASS. GEN. LAWS CH. 151, § 1B.

<u>COUNT V</u>
**FAILURE TO PAY ALL WAGES UNDER THE MWA**
**MASS. GEN. LAWS CH. 149, § 148, *ET SEQ.***
**(MASSACHUSETTS CLASS)**

211.    Bennett incorporates all prior allegations contained in this Complaint.

212.    Bennett brings her MWA claim as a class action pursuant to FED. R. CIV. P 23.

213.    The conduct alleged violates the MWA, MASS. GEN. LAWS CH. 149, § 148, *et seq*.

214.    At all relevant times, Care Access was an "employer" subject to the requirements of the MWA.

215.    At all relevant times, Care Access employed Bennett and each Massachusetts Class Member as an "employee" within the meaning of the MWA. *See* MASS. GEN. LAWS CH. 149 § 148B(a)

216.    Section 148 of the MWA requires employers, like Care Access, to pay employees, including Bennett and the Massachusetts Class Members, all wages earned, due, and owing to them on their regular payday. *See* Mass. Gen. Laws Ch. 149 § 148.

217.    During the course of their employment, Case Access agreed to pay Bennett and each Massachusetts Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek.

218.    Bennett and each Massachusetts Class Member accepted Care Access's offer.

219.    But during the course of their employment, Care Access failed to pay Bennett and the Massachusetts Class Members for all time they worked at the rates Care Access agreed to pay them because Care Access automatically deducted 30 minutes/shift from these employees' recorded hours worked.

220.    As a result of Care Access illegal automatic meal break deduction policy, Bennett and the Massachusetts Class Member have been deprived of all wages earned, due, and owed to them. *See* Mass. Gen. Laws Ch. 149 § 148.

221.    Bennett and the Massachusetts Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

222.    Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the Massachusetts Class Members all wages due, at the rates Care Access agreed to pay them, for all hours worked.

223.    Care Access's failure to pay Bennett and the Massachusetts Class Members all wages due, at the rates Care Access agreed to pay them, for all hours worked was neither reasonable; nor was the decision not to pay these employees all wages due, at the rates Care Access agreed to pay them, for all hours worked made in good faith.

224.    Accordingly, Bennett and the Massachusetts Class Members are entitled to recover their unpaid "straight time" wages, treble damages, and attorney's fees and costs. *See* MASS. GEN. LAWS CH. 149, § 150.

<u>COUNT VI</u>
**FAILURE TO PAY OVERTIME WAGES UNDER THE NYLL AND NYCRR**
**NY LAB. LAW ARTS. 6 AND 19; 12 NY CODES R. & REGS. § 142-2.2**
**(NEW YORK CLASS)**

225.    Bennett realleges and incorporates all other paragraphs by reference.

226.    Bennett brings her claims under the NYLL and NYCRR as a class action pursuant to FED. R. CIV. P 23.

227.    At all relevant times, Care Access was an "employer" subject to the requirements of the NYLL and NYCRR. *See* NY LAB. LAW §§ 190(3) and 651(6).

228.    At all relevant times, Care Access employed Bennett and each New York Class Member as an "employee" within the meaning of the NYLL and NYCRR. *See* NY LAB. LAW §§ 190(2) and 651(5).

229.    The NYLL and NYCRR require employers, like Care Access, to pay employees, including Bennett and the New York Class Members, overtime compensation at rates not less than 1.5 the employee's regular rate of pay for all hours worked over 40 hours in one workweek. *See* NY LAB. LAW ARTS. 6 & 9; 12 NY CODES R. & REGS. § 142-2.2.

230.    Bennett and the New York Class Members are entitled to overtime pay under the NYLL and NYCRR.

231.    Care Access violated, and is violating, the NYLL and NYCRR by failing to pay Bennett and the New York Class Members overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked in excess of 40 hours in a workweek, including those worked during these employees unpaid "meal breaks." *See* NY LAB. LAW ARTS. 6 & 9; 12 NY CODES R. & REGS. § 142-2.2.

232.    Bennett and the New York Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

233.    Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the New York Class Members premium overtime compensation for all overtime hours worked.

234.    Care Access's failure to pay Bennett and the New York Class Members premium overtime compensation was neither reasonable, nor was the decision not to pay these employees premium overtime compensation made in good faith.

235.    Thus, Care Access's violations were "willful" within the meaning of NYLL and NYCRR. *See* NY LAB. LAW § 198.

236.    Accordingly, Bennett and the New York Class Members are entitled to recover their unpaid overtime compensation, interest, liquidated damages, and attorney's fees and costs. *See* NY LAB. LAW §§ 198 and 663(1).

<u>COUNT VII</u>
FAILURE TO PAY ALL WAGES UNDER THE NYLL
NY LAB. LAW § 191, *ET SEQ.*
(NEW YORK CLASS)

237.    Bennett realleges and incorporates all other paragraphs by reference.

238.    Bennett brings her NYLL claim as a class action pursuant to Fed. R. Civ. P 23.

239.    The conduct alleged violates the NYLL, NY LAB. LAW § 191, *et seq.*

240.    At all relevant times, Care Access was an "employer" subject to the requirements of the NYLL. *See* NY LAB. LAW §§ 190(3) and 651(6).

241.    At all relevant times, Care Access employed Bennett and each New York Class Member as an "employee" within the meaning of the NYLL. *See* NY LAB. LAW §§ 190(2) and 651(5).

242.     Section 191 of the NYLL requires employers, like Care Access, to pay employees, including Bennett and the New York Class Members, all wages earned in accordance with the agreed terms of employment on their regular pay day. *See* NY LAB. LAW § 191(1)(d).

243.     During the course of their employment, Case Access agreed to pay Bennett and each New York Class Member an hourly rate for all hours they worked under and up to 40 hours in a workweek.

244.     Bennett and each New York Class Member accepted Care Access's offer.

245.     But during the course of their employment, Care Access failed to pay Bennett and the New York Class Members for all time they worked at the rates Care Access agreed to pay them because Care Access automatically deducted 30 minutes/shift from these employees' recorded hours worked.

246.     As a result of Care Access illegal automatic meal break deduction policy, Bennett and the New York Class Member have been deprived of all wages earned, due, and owed to them. *See* NY LAB. LAW § 191(1)(d).

247.     Bennett and the New York Class Members have been harmed as a direct and proximate result of Care Access's unlawful conduct because they have been deprived of wages owed for work that they performed and from which Care Access derived a direct and substantial benefit.

248.     Care Access knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay Bennett and the New York Class Members all wages due, at the rates Care Access agreed to pay them, for all hours worked.

249.     Care Access's failure to pay Bennett and the New York Class Members all wages due, at the rates Care Access agreed to pay them, for all hours worked was neither reasonable; nor was the decision not to pay these employees all wages due, at the rates Care Access agreed to pay them, for all hours worked made in good faith.

250.    Thus, Care Access's violations were "willful" within the meaning of NYLL and NYCRR. *See* NY LAB. LAW § 198.

251.    Accordingly, Bennett and the New York Class Members are entitled to recover their unpaid "straight time" wages, treble damages, and attorney's fees and costs. *See* NY LAB. LAW § 198.

**JURY DEMAND**

252.    Bennett demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Bennett, individually and on behalf of the Putative Class Members, seeks the following relief:

a.    An Order designating the FLSA Collective as a collective action and permitting the issuance of a notice pursuant to 29 U.S.C. § 216(b) to all Putative Class Members with instructions to permit them to assert timely FLSA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b);

b.    An Order designating the Pennsylvania, Massachusetts, and New York Classes as class actions pursuant to FED. R. CIV. P. 23;

c.    An Order appointing Bennett and her counsel to represent the interests of the FLSA Collective and Pennsylvania, Massachusetts, and New York Classes;

d.    An Order pursuant to Section 16(b) of the FLSA finding Care Access liable for unpaid back wages due to Bennett and FLSA Collective Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

e.      An Order pursuant to the PMWA finding Care Access liable for unpaid back wages due to Bennett and the Pennsylvania Class Members, as well as for all available penalty wages;

f.      An Order pursuant to the PWPCL finding Care Access liable for unpaid back wages due to Bennett and the Pennsylvania Class Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

g.      An Order pursuant to the MOL and MWA finding Care Access liable for unpaid back wages due to Bennett and the Massachusetts Class Members, as well as for treble damages in an amount equal to three times their unpaid compensation;

h.      An Order pursuant to the NYLL and NYCRR finding UHC liable for unpaid back wages due to Bennett and the New York Class Members, as well as for liquidated damages in an amount equal to their unpaid compensation;

i.      Judgment awarding Bennett and the Putative Class Members all unpaid wages and other damages available under the FLSA, PMWA, PWCPL, MOL, MWA, NYLL, and NYCRR;

j.      An Order awarding attorney's fees, costs, and expenses;

k.      Pre- and post-judgment interest at the highest applicable rates; and

l.      Such other and further relief as may be necessary and appropriate.

Respectfully submitted,

By: _/s/ Philip J. Gordon_

Philip J. Gordon (Mass. BBO# 630989)
**GORDON LAW GROUP LLP**
585 Boylston St.
Boston, MA 02116
617-536-1800 – Telephone
617-536-1802 – Facsimile
pgordon@gordonllp.com

Michael A. Josephson*
TX Bar No. 24014780
Andrew W. Dunlap*
TX Bar No. 24078444
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
TX Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
rburch@brucknerburch.com

William C. (Clif) Alexander*
TX Bar No. 24064805
Austin W. Anderson*
TX Bar No. 24045189
**ANDERSON ALEXANDER PLLC**
101 N. Shoreline Blvd., Suite 610
Corpus Christi, Texas 78401
361-452-1279 – Telephone
361-452-1284 – Facsimile
clif@a2xlaw.com
austin@a2xlaw.com

*Pro hac vice applications forthcoming*

**ATTORNEYS FOR PLAINTIFF &
THE PUTATIVE CLASS MEMBERS**