i

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| AISHA BENNETT, Individually and for Others Similarly Situated,<br><br>v.<br><br>CARE ACCESS RESEARCH LLC. | Case No. 1:23-cv-10856-MJJ<br><br>Jury Trial Demanded<br><br>FLSA Collective Action<br>Rule 23 Class Action |

**JOINT MOTION FOR APPROVAL OF FLSA COLLECTIVE ACTION SETTLEMENT**

## **INTRODUCTION**

Plaintiff Aisha Bennett (Bennett or Plaintiff) and Defendant Care Access Research, LLC. (Care Access or Defendant) (together, the Parties) have agreed, subject to Court approval of the release, to resolve this wage and hour lawsuit with Bennett, Settlement Plaintiffs, and Non-Overtime Plaintiffs (collectively, "Plaintiffs") after sending notice to Plaintiffs. The settlement satisfies the criteria for approval of a Fair Labor Standards Act (FLSA) collective action settlement because it resolves a bona-fide dispute. The settlement was reached after in-depth investigation, review of documentary evidence and payroll data, multiple mediations, and was the result of arm's-length settlement negotiations between experienced counsel and a private mediator, all of whom agree the settlement provides good value to the workers it will benefit.

As shown below, the Parties' Settlement[1] is a fair and reasonable resolution to a *bona fide* dispute between the Parties regarding the Plaintiffs' classification status under the FLSA and claimed entitlement to overtime compensation. Under the Settlement, the Gross Settlement Amount represents approximately 123% of the eligible Plaintiffs' claimed total two-year back wages. Further, even after attorneys' fees, costs, and service award, the Net Settlement Amount available for distribution to Plaintiffs is nearly 70% of their claimed total two-year back wages.

The Parties respectfully request that the Court issue an order: (1) approving the settlement set forth in the Settlement Agreement and Release ("Settlement Agreement"), attached as Exhibit 1; (2) approving a Service Award of $5,000.00 to Bennett; (3) incorporating the terms of the settlement; and (4) dismissing the Lawsuit with prejudice.

---

[1] Capitalized terms not defined herein shall have the meanings ascribed to them in the Settlement Agreement and Release that is being filed with the Court contemporaneously herewith.

## FACTUAL AND PROCEDURAL BACKGROUND

1. **Factual Allegations**

Bennett alleges that Care Access violated the FLSA by improperly classifying her and its other employees staffed to Care Access's client research locations as independent contractors ineligible for overtime compensation, which Care Access denied and continues to deny. Specifically, Bennett claimed that her and other workers were employees of Care Access to whom Care Access paid the same hourly rate for all hours worked, including those in excess of 40 per workweek, without a guaranteed salary or overtime pay.

2. **Overview of Investigation, Litigation, and Settlement Negotiations**

Before the initiation of this action, Plaintiffs' Counsel conducted a thorough investigation into the merits of the potential claims and defenses. Plaintiffs' Counsel focused their investigation and legal research on the underlying merits of the potential collective action members' claims, the damages to which they claimed to be entitled, and the propriety of collective action certification.

On April 20, 2023, Bennett filed this class and collective action lawsuit against Care Access, individually and on behalf of putative class members alleging violations of the FLSA and Massachusetts, New York, and Pennsylvania wage laws. *See generally* Doc. No. 1. Care Access filed its Answer on June 16, 2023. Doc. No. 16. Thereafter, Bennett amended her Complaint on December 22, 2023. Doc. 35, and on _____. Doc. XX. Care Access disputed and continues to dispute all material allegations, maintaining that Plaintiffs were and are appropriately classified as independent contractors, not employees, and accordingly are not eligible for overtime compensation. Care Access further maintains the claims in this action are not suitable for class or collective adjudication.

## SUMMARY OF THE SETTLEMENT TERMS

1. **Settlement Amount**

The Settlement Agreement establishes a Gross Settlement Amount of $760,000.00 which

consists of (1) the negotiated settlement payments for distribution to the Settlement Plaintiffs and Non-Overtime Plaintiffs, including a designated Reserve Fund; (2) a separately negotiated award of attorneys' fees and costs; and (3) a Service Award for Bennett of $5,000.00.

2. **Payments to Plaintiffs**

Plaintiffs who participate in this settlement fall into one of two categories: Those calculated as having potential damages related to allegedly unpaid overtime (the "Settlement Plaintiffs") and those whose records reflect no potential overtime damages (the "Non-Overtime Plaintiffs"). There are approximately 398 individuals eligible to become Settlement Plaintiffs and approximately 193 individuals eligible to become Non-Overtime Plaintiffs under the Settlement. There are an additional approximately 45 individuals who will qualify as either a Settlement Plaintiff or Non-Overtime Plaintiff and will be treated as such under the Settlement Agreement after additional data regarding their alleged overtime (if any) is reviewed, and any additional individuals who come forward with timely claims prior to the entry of the Approval Order and to whom Care Access decides, in its full discretion, to make a discretionary settlement payment in exchange for a release (the "Reserve Claimants"). Together, the Settlement Plaintiffs, Non-Overtime Plaintiffs, and Reserve Claimants (including the additional 45 individuals who will qualify as either Settlement Plaintiffs or Non-Overtime Plaintiffs) are the "Plaintiffs."

Settlement Plaintiffs will receive their share of the settlement as follows: (1) one half as back wages, from which taxes will be withheld and for which a W-2 will be issued; and (2) one half as liquidated damages, for which Form 1099s will be issued. Care Access will pay the employer's share of any payroll taxes owing on any payment subject to payroll taxes.

Non-Overtime Plaintiffs will receive their settlement payments as non-wages, for which Form 1099s will be issued.

3

3. **Payment Procedure**

Within fourteen (14) calendar days after the Court's approval of the Settlement Agreement becomes final, Care Access shall: (1) Fund the settlement in the total gross amount of $760,000.00[2]; and (2) Provide to the Plaintiffs' Counsel and to ILYM Group (the Parties' Settlement Administrator), in electronic format, if possible, the names, last known addresses, last known telephone numbers (if any), last known email addresses (if any) and social security numbers of the potential Plaintiffs (as described in the Parties' Settlement Agreement).

Within 45 days of the Court's approval of the Settlement becoming final, the Settlement Administrator shall send a Settlement Packet to each Plaintiff. The Settlement Packet shall contain the Notice and Settlement Check(s) for the Plaintiff's settlement payment. The amount of the Settlement Checks will be calculated on a pro rata basis, accounting for overtime damages or lack thereof among the Plaintiffs. The Settlement Checks will remain valid for 120 days from the date of issuance, at which point any unclaimed monies will revert to Care Access.

4. **Release**

Settlement Plaintiffs will execute a release of all federal and applicable state wage and hour claims against Care Access, for the time period from January 1, 2020 through the date the settlement is approved by the Court. Non-Overtime Plaintiffs will execute a limited release of federal and state wage and hour claims arising from, or related to the independent contractor misclassification claims alleged in the instant action, regarding events alleged to have occurred from January 1, 2020 through Court approval of the Settlement. In exchange for her Service Award, Named Plaintiff Bennett will execute a general release of any claims against Care Access. Plaintiffs who ultimately do not participate in the settlement by cashing a check will not release any claims.

---

[2] The Gross Settlement Amount does not include the employer's share of taxes, or any Settlement Administration costs, which shall be paid separately by Care Access.

5. **Allocation Formula**

Settlement Payments to the Settlement Plaintiffs – that is, the settlement participants whose Care Access records reflect potential unpaid overtime due – will be paid from the Net Settlement Amount and calculated on a pro rata basis, with allowance for potential state law claims.

Non-Overtime Plaintiffs, the individuals for whom pay records and invoices reflect no unpaid overtime due or owed by Care Access, will each receive a check for $50.00, to be paid from the Net Settlement Amount.

All Settlement Payment determinations shall be based on Care Access's records.

6. **Service Award**

The Settlement Agreement provides that, subject to Court approval, Bennett will receive a $5,000.00 Service Award in recognition of assistance rendered in obtaining the benefits of the settlement for the collective as well as the risks she felt she took to do so. Bennett assisted Plaintiffs' Counsel in the investigation of the claims at issue in the Lawsuit, and helped Plaintiffs' Counsel achieve this Settlement, including by providing detailed accounts of her work experiences, hours worked, and the Care Access's practices and procedures.

## ARGUMENT

1. **A One-Step Approval Process Is Standard for FLSA Settlements.**

Throughout the country, a one-step approval process, rather than the two-step process for settlement approval of class actions, is appropriate in FLSA settlements that do not include classes under Federal Rule of Civil Procedure 23 ("Rule 23").[3] This is because collective actions under 29

---

[3] *See Bozak v. Fedex Ground Package Sys., Inc.*, No. 11 Civ. 738, 2014 WL 3778211, at *2 (D. Conn. July 31, 2014); *Dixon v. Zabka*, No. 11 Civ. 982, 2013 WL 2391473, at *1-2 (D. Conn. May 23, 2013); *Campbell v. Advantage Sales & Mktg. LLC*, No. 09 Civ. 1430, 2012 WL 1424417, at *1 (S.D. Ind. Apr. 24, 2012); *Aros v. United Rentals, Inc.*, Nos. 10 Civ. 73, *et al.*, 2012 WL 3060470, at *2 (D. Conn. July 26, 2012); *Castillo v. Noodles & Co.*, No. 16 Civ. 03036 (N.D. Ill. Dec. 23, 2016) ("A one-step settlement approval process is appropriate[]" in FLSA settlements.); *Briggs v. PNC Fin. Servs. Grp. Inc.*, No. 15 Civ.

U.S.C. § 216(b) of the FLSA ("Section 216(b)") do not implicate the same due process concerns as Rule 23 class actions since there are no absent class members. *O'Connor v. Oakhurst Dairy*, No. 14 Civ. 00192, 2015 WL 2452678, at *4 (D. Me. May 22, 2015) ("The due process safeguards built into Rule 23 class actions are not necessary in the FLSA collective action context."). "Unlike Federal Rules of Civil Procedure Rule 23 class actions, FLSA collective actions require similarly situated employees to affirmatively opt-in and be bound by any judgment." *Cunha v. Avis Budget Car Rental, LLC*, No. 16 Civ. 10545, 2016 WL 6304432, at *2 (D. Mass. Oct. 26, 2016) (internal quotation marks omitted); *Pike v. New Generation Donuts, LLC*, No. 12 Civ. 12226, 2016 WL 707361, at *3 (D. Mass. Feb. 20, 2016) (same); *O'Connor*, 2015 WL 2452678, at *4 ("[W]ith an opt-in collective action, only individuals who affirmatively chose to join the litigation will be bound by its outcome."); *see also Genesis Healthcare Corp. v. Symczyk*, 133 S. Ct. 1523, 1529 (2013) ("Rule 23 actions are fundamentally different from collective actions under the FLSA[.]").

Accordingly, courts do not apply the exacting standards for approval of a class action settlement under Rule 23 to FLSA settlements. *See, e.g., Beckman v. KeyBank, N.A.*, 293 F.R.D. 467, 476 (S.D.N.Y. 2013) ("[T]he standard for approval of an FLSA settlement is lower than for a class action under Rule 23."); *see also Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579-80 (7th Cir. 1982) (discussing due process concerns present in Rule 23 class action that are not present in FLSA collective actions).

---

10447 (N.D. Ill. Nov. 29, 2016) (same); *Koszyk v. Country Fin. a/k/a CC Servs., Inc.*, No. 16 Civ. 3571, 2016 WL 5109196, at *1 (N.D. Ill. Sept. 16, 2016); *Watson v. BMO Fin. Corp.*, No. 15 Civ. 11881 (N.D. Ill. July 11, 2016); *Blum v. Merrill Lynch & Co., Inc.*, No. 15 Civ. 1636 (S.D.N.Y. May 6, 2016); *Besic v. Byline Bank, Inc.*, No. 15 Civ. 8003 (N.D. Ill. Oct. 26, 2015); *Prena v. BMO Fin. Corp.*, No. 15 Civ. 9175, 2015 WL 2344949, at *1 (N.D. Ill. May 15, 2015) ("One step is appropriate because this is an FLSA collective action, where collective members must affirmatively opt-in in order to be bound by the settlement (including the settlement's release provision)."); *Anwar v. Transp. Sys., Inc.*, No. 13 Civ. 2666 (S.D.N.Y. Nov. 17, 2014); *Roberts v. Apple Sauce, Inc.*, No. 12 Civ. 830, 2014 WL 4804252, at *1 (N.D. Ind. Sept. 25, 2014); *Powell v. Lakeside Behavioral Healthcare, Inc.*, No. 11 Civ. 719, 2011 WL 5855516, at *1 (M.D. Fla. Nov. 22, 2011); *Raymer v. Mollenhauer*, No. 10 Civ. 210, 2011 WL 338825, at *1 (N.D. Ind. Jan. 31, 2011).

Where, as in this matter, individuals are not part of the settlement unless they execute their pro rata settlement check, there is no need to require that the settlement provide for opt-outs or objections. *See Johnson v. VCG Holding Corp.*, 802 F. Supp. 2d 227, 233 (D. Me. 2011) ("The central difference between collective certification under the FLSA and under Rule 23 is the FLSA's requirement that those interested in joining the putative class opt in, while Rule 23 certification requires the uninterested to opt out.") (citing *Cameron-Grant v. Maxim Healthcare Services, Inc.*, 347 F.3d 1240, 1249 (11th Cir. 2003)).

Here, Settlement Plaintiffs and Non-Overtime Plaintiffs will each receive their Settlement Payment with their allocated portion of the Net Settlement Amount. From there, they have the option to execute the Settlement Award check confirming their approval of the Settlement, releasing claims as described therein and consenting to become a party to the Lawsuit for purposes of the Settlement. If a Plaintiff does not execute and cash his/her Settlement Award check, then they not be considered a Plaintiff for settlement purposes (or any purposes), will not release any claims that they may have against Care Access.

2. **Negotiating the Settlement Checks as Consent to Join FLSA Collective Action Settlement is Common Practice.**

Under the Parties' Settlement Agreement, Plaintiffs who negotiate, cash, or deposit the Settlement Award checks are consenting to join the FLSA collective action and will compromise their rights to separately sue Defendant for overtime pay under the FLSA as set forth in the Settlement Agreement. Allowing Plaintiffs to participate in the Settlement by the act of negotiating a settlement check ensures the most comprehensive relief for those who choose to participate, because they are not required to fill in and return a written consent form.

As shown below, "cashing-of-the-check" FLSA opt-in procedures are commonly approved by federal courts throughout the country as a method of requiring affirmative steps to participate in

the FLSA collective. This method allows maximum participation by reducing the burden to participate.

For example:

- *Cerrato v. Durham Pub. Sch. Bd. of Educ.*, No. 1:16CV1431, 2017 WL 2983301, at *1 (M.D.N.C. Mar. 17, 2017) -- conditionally certifying FLSA settlement class of "Any and all non-managerial employees employed by Integrity to work in Durham Public Schools pursuant to a contract between Durham Public Schools and SSC Service Solutions, Inc. ("Service Solutions") who worked overtime between September 16, 2012, and November 5, 2014, and approving settlement of same for those who sign or negotiate the settlement checks distributed pursuant to the Settlement Agreement."

- *Edelen v. Am. Residential Servs.*, Civ. A. No. DKC-11-2744, 2013 WL 3816986, at *2 (D. Md. July 22, 2013) – granting approval for FLSA settlement opt-in procedure where the agreement provided "members of the proposed collective class who sign or endorse their settlement checks from Defendants will be deemed to have agreed to (1) joining the FLSA collective action and (2) releasing their FLSA claims (including any claims for liquidated damages) arising out of Defendants' purported failure to calculate their overtime rates of pay properly during the period from September 23, 2008, to October 5, 2011."

- *Furman v. At Home Stores, LLC.*, No. 1:16-cv-08190, Doc. 30 (N.D. Ill. May 1, 2017) (Rowland, M.J.) --granting approval of FLSA collective action settlement involving cashing of the check FLSA opt-in procedure, where the back of each settlement check stated "By cashing this check, I agree to join the case [], and I agree to participate in the Settlement and be bound by the release of claims in the Settlement Agreement." *Id.* at *3-4; *see also Furman*, No. 1:16-cv-08190, Doc. 28-1 at *11.

- *Seghroughni v. Advantus Rest., Inc.*, No. 8:12-cv-2000-T-23TBM, 2015 WL 390329, at *1 n.* (M.D. Fla. Jan. 28, 2015) – granting approval of FLSA class and collective action settlement and approving use of cashing of the check method where the settlement agreement stated "[b]y endorsing his or her settlement check, each FLSA Class Member shall release Defendants from all FLSA claims, as well as state wage and hour claims, that were brought in the Litigation or that are based on the same facts and circumstances as the claims brought in the Litigation, through the date on which the Court grants preliminary approval of the settlement."

- *Ortiz v. Chop't Creative Salad Co. LLC*, No. 13 Civ. 2541(KNF), 2014 WL 1378922, at **2, 14 (S.D.N.Y. Mar. 25, 2014) – approving FLSA class and collective action and the cashing check opt in procedure for FLSA collective action members who endorse their settlement checks.

This method is "calculated to maximize the collective members' participation in the settlement" and such "efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying off the attorneys and leaving the collective members with a recovery

8

that is only illusory." *Besic v. Byline Bank, Inc.*, No. 16 C 8003, 2015 WL 13763028 (N.D. Ill. Oct. 26, 2015).

Here, Settlement Plaintiffs who negotiate, cash, or deposit the Settlement Award checks sent to them are consenting to join the FLSA collective action portion of this Lawsuit and giving up any rights to separately sue Care Access for overtime pay, but any Plaintiffs who do not negotiate or deposit the Settlement Award checks they receive will preserve any rights under the FLSA. *Id.* This method is fair and aimed at maximizing the broadest possible participation by Plaintiffs in the Settlement and peace of mind for all parties.

**3. <u>The Settlement Is Fair and Reasonable and Should Be Approved.</u>**

The Court has a duty to determine whether the proposed settlement is "a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Curtis v. Scholarship Storage Inc.*, No. 14 Civ. 303, 2016 WL 3072247, at *2 (D. Me. May 31, 2016) (internal quotation marks omitted); *see also Singleton v. AT&T Mobility Servs., LLC*, 146 F. Supp. 3d 258, 260 (S.D.N.Y. 2015) (same). Courts approve wage and hour settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes. *See, e.g., Curtis*, 2016 WL 3072247 at *3; *Singleton*, 146 F. Supp. 3d at 260; *Scovil v. FedEx Ground Package Sys., Inc.*, No. 10 Civ. 515, 2014 WL 1057079, at *1 (D. Me. Mar. 14, 2014). If a proposed settlement reflects a reasonable compromise over contested issues, a court should approve the settlement. *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982) ("If a settlement in an employee FLSA suit does reflect a reasonable compromise over issues . . . we allow the district court to approve the settlement. . . ."); *Curtis,* 2016 WL 3072247, at *2 ("A court may approve a FLSA settlement if it is 'a fair and reasonable resolution of a bona fide dispute over FLSA provisions'"); *see also United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 84 (1st Cir. 1990) ("[I]t is the policy of the law to encourage settlements."); *Durrett v. Hous. Auth. of City of Providence*, 896 F.2d 600, 604 (1st Cir. 1990) (noting "the clear policy in favor of encouraging settlements") (internal quotation marks omitted);

William B. Rubenstein, Newberg on Class Actions § 13.44 (5th Ed.) ("The law favors settlement, particularly in class actions and other complex cases where substantial resources can be conserved by avoiding lengthy trials and appeals.").

The Settlement in this case easily meets the standard for approval. Bennett's action was initiated as the result of extensive pre-suit investigation. The litigation itself gave rise to hotly contested discovery and legal disputes between the Parties. *See e.g.* Doc. 36, Doc. 37, Doc. 38. Moreover, the Settlement was only reached after substantial arm's-length negotiations and multiple mediations over several weeks. *See Woolfson v. Caregroup, Inc.*, No. 09 Civ. 11464, 2010 WL 10063268, at *2 (D. Mass. Sept. 13, 2010) (approving FLSA settlement where it was "the result of arms-length negotiations between experienced counsel representing the interests of the plaintiffs and defendant, after thorough factual and legal investigation"). Recognizing the uncertain legal and factual issues involved, the Parties reached the Settlement pending before the Court.

The Settlement amount is fair and appropriate, especially in light of the considerable risk that Plaintiffs face. Care Access vehemently contends Bennett and any potential Plaintiffs were properly classified as independent contractor and not entitled to overtime under the FLSA. If Care Access were to prevail on such a contention, Bennett and the putative class members would face the possibility of little or no recovery. Moreover, Bennett would also face considerable obstacles in achieving certification for her proposed collective. Even if conditionally certified, Plaintiffs face significant risk of de-certification. A trial on the merits would involve significant risks for Bennett and Plaintiffs as to liability, damages, and costs. Finally, unless Plaintiffs meet their burden to prove a "willful" violation, only a 2-year limitation period will apply and thus Plaintiffs' potential damages will be significantly diminished.

The proposed allocation of the Settlement is also reasonable. It reflects a proportion of damages sought by Bennett based on the actual hours worked by her and Plaintiffs paid by Care

10

Access, which is a reasonable approximation of each individual's alleged overtime damages. *See, e.g.*, *Lapan v. Dick's Sporting Goods, Inc.*, No. 13 Civ. 11390, 2015 WL 8664204 (D. Mass. Dec. 11, 2015) (approving class and collective overtime settlement agreement with an allocation formula based upon the number of weeks worked by class members); *Henry v. Little Mint, Inc.*, No. 12 Civ. 3996, 2014 WL 2199427, at *3, *17 (S.D.N.Y. May 23, 2014) (approving allocation formula based in part on number of workweeks class members were employed during the class period).

In the present case, the proposed Settlement will provide individual settlement payments to the Settlement Plaintiffs representing a substantial percentage of their claimed damages as calculated by Plaintiffs' counsel. The proposed method of allocation (individual payments proportionate to their claimed damages) is fair to all. *See Lazy Oil Co. v. Witco,* 95 F. Supp. 2d 290, 339 (W.D. Pa. 1997) (approving 35% recovery for the entire class period, and 25.5% of damages within the limitations period); *In re Domestic Air Tranp. Antitrust Litig.,* 148 F.R.D. 297, 325 (N.D. Ga. 1993) (12.7% to 15.3%); *In re Newbridge Networks Sec. Litig.,* 1998 WL 765724, at *2 (D.D.C. Oct. 23, 1998) (approving settlement and concluding that while "[c]ourts have not identified a precise numerical range within which a settlement must fall in order to be deemed reasonable; [ ] an agreement that secures roughly six to twelve percent of a *potential* trial recovery, while preventing further expenditures and delays and eliminating the risk that no recovery at all will be won, seems to be within the targeted range of reasonableness");

*In re Ravisent Techs., Inc. Sec. Litig.,* 2005 WL 906361, at *9 (E.D. Pa. Apr. 18, 2005) (approving settlement, which amounted to 12.2% of damages, and citing a study by Columbia University Law School, which determined that "since 1995, class action settlements have typically recovered between 5.5% and 6.2% of the class members' estimated losses.") (internal citations omitted); *Shaw v. Toshiba America Information Systems, Inc.*, 91 F. Supp. 2d 942, 988 (E.D. Tex. 2000) (citing study conducted by

11

the National Economic Research Associates: "the average result achieved for class members was only 7% to 11% of claimed damages.").

Under the Settlement, the Gross Settlement Amount represents approximately 123% of the eligible Plaintiffs' total claimed two-year back wages. Further, even after attorneys' fees, costs, and service award, the Net Settlement Amount available for distribution to Plaintiffs is nearly 70% of their total claimed two-year back wages. The recovery by the Plaintiffs is well within (and, in many cases, above) the normal range for settlements of this nature which have been approved by courts nationwide. *See id.* The quality of this result speaks for itself, and no further analysis, or speculation about net expected value, is required. *Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863-864 (7th Cir. 2014)(where "the settlement was proposed by an experienced third-party mediator after an arm's-length negotiation where the parties' positions on liability and damages were extensively briefed and debated" the district court was not required to quantify the net expected value of continued litigation).

### 4. Notice with Settlement Checks Increases the Fairness of the Settlement.

The aforementioned "cashing-of-the-check" approach for individuals to affirmatively consent to join an FLSA collective action allows maximum participation by reducing the burden to participate. *See* Andrew C. Brunsden, *Hybrid Class Action, Dual Certification, and Wage Law Enforcement in the Federal Courts*, 29 Berkeley J. Emp. & Lab. L. 269, 294 (2008).

In *Besic*, the court granted final approval of an FLSA collective action settlement involving the same "cashing of the check" opt-in procedure advocated by the parties in this case. 2015 WL 13763028 at *3. In doing so, the court noted the "cashing of the check" opt-in procedure was "calculated to maximize the collective members' participation in the settlement" and found "the efforts to maximize participation suggest that this is not a settlement where defendants are attempting to buy peace by paying of the attorneys and leaving the collective members with a recovery that is only illusory." *See id.* at *2.

12

The total Settlement is fair, reasonable, and adequate. The fact that Care Access is sending checks to all potential class members with the Notice further enhances the equitable nature of the Settlement because it increases participation.

### 5. The Service Award to Bennett Should Be Approved as Fair and Reasonable.

Bennett requests approval of the Service Award of $5,000.00. The Service Award that she requests is reasonable given the contributions she made to advance the prosecution and resolution of the lawsuit. *Scovil*, 2014 WL 1057079, at *6 ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit."). This is especially true in employment litigation. *See Bozak*, 2014 WL 3778211, at *4 ("[I]n employment litigation, the plaintiff is often a former or current employee of the defendant, and thus, by lending his name to the litigation, he has, for the benefit of the class as a whole, undertaken the risk of adverse actions by the employer or co- workers." (quoting *Velez v. Majik Cleaning Serv., Inc.*, No. 03 Civ. 8698, 2007 WL 7232783, at *7 (S.D.N.Y. June 25, 2007) (internal quotation marks omitted)); *see generally* Nantiya Ruan, *Bringing Sense to Incentives: An Examination of Incentive Payments to Named Plaintiffs in Employment Discrimination Class Actions*, 10 Emp. Rts. & Emp. Poly J. 395 (2006).

Service awards serve the important purpose of compensating plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by plaintiffs. *See, e.g., In re Celexa & Lexapro Mktg. & Sales Practices Litig.*, No. MDL 09-2067, 2014 WL 4446464, at *9 (D. Mass. Sept. 8, 2014) ("The purpose of [] incentive awards is to reimburse the plaintiffs for their effort in pursuing the claims on behalf of the entire class."); *Bussie v. Allamerica Fin. Corp.*, No. 97 Civ. 40204, 1999 WL 342042, at *3-4 (D. Mass. May 19, 1999) (noting courts consider, *inter alia*, efforts of the named plaintiff in granting awards). Service awards are commonly awarded to those who serve the class's and collective's interests. *Scovil*, 2014 WL 1057079, at *6.

Courts in this circuit and others have approved service awards for higher amounts in employment cases. *See, e.g.*, *Scovil*, 2014 WL 1057079, at *8 (approving $15,000 service awards to plaintiffs who provided assistance throughout the lawsuit and discussing comparable awards in other district courts); *DeLeon v. Wells Fargo Bank, N.A.*, No. 12 Civ. 4494, 2015 WL 2255394, at *7 (S.D.N.Y. May 7, 2015) (approving $15,000 service to plaintiff for "participating in a lawsuit against her former employer and the efforts she made on behalf of the class, including producing documents, continuously speaking with Class Counsel, and actively participating in the mediation"); *Dent v. ITC Serv. Grp., Inc.*, No. 12 Civ. 00009, 2013 WL 5437331, at *4, *9 (D. Nev. Sept. 27, 2013) (approving $15,000 award where plaintiff "subjected himself to a substantial, and detrimental, level of notoriety by instituting this lawsuit, assumed a significant financial risk by prosecuting this litigation, and pledged to fully participate in discovery in this case and fully cooperated with Class Counsel in prosecuting this case.") (internal quotation marks omitted). Here, Bennett's actions have resulted in meaningful and appropriate benefit to Plaintiffs, leading to an overall result which is fair and reasonable.

## CONCLUSION

For the reasons set forth above, Plaintiffs respectfully request that the Court issue an order: (1) approving the Settlement as fair, adequate, and reasonable, as set forth in the Settlement Agreement and Release attached hereto as Exhibit 1; (2) approving Service Awards of $5,000.00 to Bennett; (3) incorporating the terms of the Settlement Agreement; and, (4) dismissing this case with prejudice.

    Respectfully submitted,

By: */s/ Alyssa J. White*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Alyssa J. White
Texas Bar No. 24073014
**JOSEPHSON DUNLAP, LLP**

14

>11 Greenway Plaza, Suite 3050
>Houston, Texas 77046
>Tel: (713) 352-1100
>Fax: (713) 352-3300
>mjosephson@mybackwages.com
>adunlap@mybackwages.com
>awhite@mybackwages.com
>
>AND
>
>Richard J. (Rex) Burch
>Texas Bar No. 24001807
>**BRUCKNER BURCH, PLLC**
>11 Greenway Plaza, Suite 3025
>Houston, Texas 77046
>Tel: (713) 877-8788
>Fax: (713)877-8065
>rburch@brucknerburch.com
>
>AND
>
>Clif Alexander
>Texas Bar No. 24064805
>Austin W. Anderson
>Texas Bar No. 24045189
>Carter T. Hastings
>Texas Bar No. 24101879
>**ANDERSON ALEXANDER, PLLC**
>101 N. Shoreline Blvd., Suite 610
>Corpus Christi, Texas 78401
>Telephone: (361) 452-1279
>Facsimile: (361) 452-1284
>clif@a2xlaw.com
>austin@a2xlaw.com
>carter@a2xlaw.com
>
>AND
>
>Philip J. Gordon (Mass. BBO# 630989)
>**GORDON LAW GROUP LLP**
>585 Boylston St.
>Boston, MA 02116
>617-536-1800 – Telephone
>617-536-1802 – Facsimile
>pgordon@gordonllp.com
>
>**ATTORNEYS FOR PLAINTIFF**

15

        AND

        By: <u>*/s/ Keri L. Engelman*</u>
         Keri L. Engelman (BBO# 704360)
         Liliya P. Kramer (BBO# 696232)
         **Morgan, Lewis & Bockius LLP**
         One Federal Street
         Boston, MA 02110
         Tel. (617) 341-7700
         Fax. (617) 341-7701
         douglas.schwarz@morganlewis.com
         keri.engelman@morganlewis.com
         liliya.kramer@morganlewis.com

        **ATTORNEYS IN CHARGE FOR DEFENDANT**

### CERTIFICATE OF SERVICE

  I hereby certify that this document, filed through the ECF system, will be sent electronically to the registered participants as identified on the Notice of Electronic Filing as of the date of filing.

           <u>*/s/ Alyssa J. White*</u>
           Alyssa J White